[Circuit Court of Sandusky County.]

THE STATE OF OHIO, EX REL SWINT, REINICK & COMPANY, v. THE BOARD OF COUNTY COMMISSIONERS OF SANDUSKY COUNTY, OHIO.

Decided, December, 1906.

*County Commissioners—Bids and Bidding—For County Bridges—Mandamus to Compel Award to the Lowest Bidder—Discretion of Commissioners—Contracts which Need not be Awarded to the Lowest Bidder.*

1. It is not improbable that mandamus will lie to compel county commissioners to award a contract for a public improvement to the lowest and best bidder, when the statute requires such action on their part, and it appears by undisputed evidence, or concession in pleadings, that one of the bidders is the lowest and best, and that the commissioners are fraudulently colluding for the award of the contract to another bidder.

2. But where the petition fails to disclose that the contract is one which the commissioners are required to award by public bidding, the fact that they did advertise in regular form for bids with a reservation of the right to reject any or all, does not afford ground for compelling them to accept the lowest and best bid, or for complaint because an amendment was permitted to one of the bids after expiration of the time fixed for their filing, whereby better figures were obtained for the county.

*Per Curiam.*

Error to the Court of Common Pleas of Sandusky County, Ohio.

This is a proceeding by which the plaintiff in error seeks to reverse a judgment of the court of common pleas, sustaining a demurrer to the amended petition of plaintiff and dismissing

the plaintiff's action.   The case is one instituted in the court
below for injunction and mandamus.

The plaintiff, in its amended petition, alleges that the relators,
together with other persons, submitted bids for the construction
of certain bridges in said county, and that the relators were the
lowest and best bidders therefor.   It is claimed that plans and
specifications and estimates were prepared and that the proceed-
ings of the board of county commissioners of said county were
taken under Sections 795 to 800, inclusive, of the Revised Stat-
utes; that notices were published for four weeks in a newspaper
published and of general circulation in said county, soliciting
such bids, in pursuance of said plans and specifications, for
each of said bridges separately, and with a provision in said
notices that bids would .be received up to twelve o'clock noon
on the second day of March, 1906.   The plaintiff says that rela-
tors filed, in due form, within the time named in the notice, a
sealed bid in all respects as required by the notice published and
by the statute and in accordance with the said plans and specifi-
cations, agreed to furnish materials and do the required work
upon all said bridges for the sum of $709.08.

The amended petition alleges further, among other matters,
that at the time specified in said notice the said board of com-
missioners opened and read the bids and that the said board
of commissioners, together with the county surveyor, tabulated
the same and found and declared the bid of the relators to be
the lowest and best bid, but adjourned for the noon hour with-
out awarding the contract; that at a later hour of the same day
the said board of commissioners reassembled for the purpose of
taking futher action in the matter of awarding the contract.

The amended petition further alleges that the bid of another
party, known as the Hughes Brothers, was of like character
with that of the relators, but was for the sum of $929.07; and
that during the adjournment of said board of commissioners
and after the opening of the bids, and before the reassembling
of the said board, the said Hughes Brothers, acting in collusion
with certain members of said board of county commissioners,
added to their bid and proposal the following sentence:   "If
the said board awards the said Hughes Brothers all the said

bridges we will allow a reduction of fifteen per cent. from the total amount stated in this bid.'' It is further alleged that said Hughes Brothers and certain members of said board illegally colluded and fraudulently conspired in the making and procuring of said change and alteration in said Hughes Brothers' bid, and that said change and alteration were made after twelve o'clock on the second day of March, 1906, and after all the bids herein mentioned and described had been opened and read by the said board of commissioners, and that said change and alteration were contrary to the terms and conditions prescribed in said notice by the said commissioners and contrary to and in violation of law; that said reduction in price was made after the bids had been opened and read, and after the relators had been ascertained to be the lowest bidders, and after said commissioners and Hughes Brothers had full knowledge that relators were the lowest and best bidders, and was made in fraud and violation of the relators' rights in the premises.

The plaintiff alleges the intention of said board to enter into a contract with said Hughes Brothers for furnishing of the work and materials for said bridges and that they will do so unless restrained by the order of the court. Based upon these and other facts mentioned, the plaintiff asks for a writ of mandamus against the said board commanding it to award its said contract to the relators, and also that said board be enjoined from entering into any contract with said Hughes Brothers. The demurrer to this amended petition is upon the ground that it does not state facts constituting a cause of action, and that said facts do not entitle the relators to the relief asked. The estimated cost of the contemplated structures is not stated in the amended petition, except that as to each of the bridges it is less than $1,000. Copies of the notice and of the relators' alleged bids are attached to said amended petition and made a part thereof.

By the filing of a demurrer the allegations of the amended petition are, of course, to be taken as true, including the averment that some of the commissioners colluded with Hughes Brothers as to the alteration of their bid, and that the bid of relators was the lowest and best bid among those submitted.

The notice published by the commissioners contained an express reservation of a right "to reject any or all bids."

We have no doubt, under the facts admitted by the demurrer, as to the right of a tax-payer of the county to an injunction to restrain the commissioners from awarding the contract to the Hughes Brothers after the refusal of the prosecuting attorney to institute such suit.    There is here, however, no allegation either that the relators are tax-payers or that the prosecuting attorney has been requested or has refused to institute such proceedings for an injunction.    It seems to be conceded by both parties that the question now pending before our court involves only the sufficiency of the facts alleged by the relators to entitle them to the writ of mandamus compelling the county commissioners to award to them the contract.

It has been generally held that the courts will not, by mandamus, interfere with the discretion of the commissioners and like bodies, in determining as to which among several bidders for a contemplated improvement is the lowest and best bidder. These cases, however, so far as we are advised, have not involved the consideration of such facts as are herein disclosed, and it is not improbable that, in a case where, under the statute, the commissioners are compelled to award a contract for an improvement to the lowest and best bidder, if it should appear by the undisputed evidence, or concession in pleadings, as here, that one of the bidders was the lowest and best, and that the commissioners were fraudulently colluding with another to defeat the statute, the court might interfere by mandamus.

But does this amended petition disclose a case in which the commissioners were compelled to let the contract or contracts for the construction of these bridges upon competitive bidding?    As already stated, the estimated cost of the proposed structures is not given, although it is said to have been, as to each of said bridges, less than $1,000.    But in Section 798, Revised Statutes, it is provided that—

"When the estimated cost of any * * * bridge or bridge sub-structure or of making any addition thereto or repair thereof, does not exceed $200.00, the same may be let at private contract without any publication or notice thereof."

The pleadings nowhere aver that these bridges were not of the class so specified in the statute—that is to say, bridges of an estimated cost not to exceed $200; and the bids of the relators indicate that no one of the bridges was to cost the county upon such bidding as much as $200.

Upon this state of facts we fail to discover that there was any requirement of the statute that the contract should be let to the competition of bidders at all. If the county commissioners saw fit to invite offers from contractors, it was their privilege so to do. The action taken by them, so far as disclosed by the amended petition, was entirely voluntary and it was within the power of the commissioners when so acting to reserve to themselves the right to reject any or all bids, as in terms they did. With this reservation, neither the relators nor any other bidder had a right to insist upon the acceptance of a bid, and after the opening and inspection of several bids, the commissioners might, if they chose, permit any amendments of such offers tendered them, so as to obtain the best figures for the county.

These views, of course, dispose of the questions as to the right of the relators to either injunction or mandamus, or both. We find no error in the conclusion reached by the court below, and the judgment will be affirmed.

*Hal De Ran*, for plaintiff in error.

*M. W. Hunt*, for defendant in error.